HALEY B. ZOFFER (State Bar No. 334968)
  haleyzoffer@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071-2566
Tel.: (213) 633-6800

DAVID GOSSETT (*pro hac vice* forthcoming)
  davidgossett@dwt.com
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW
Washington, D.C. 20005
Telephone: (202) 973-4200

MARYANN ALMEIDA (*pro hac vice* forthcoming)
  maryannalmeida@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 5th Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3150

Attorneys for Petitioner
BAGDASARIAN PRODUCTIONS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAGDASARIAN PRODUCTIONS, LLC,<br><br>  Petitioner,<br><br>  vs.<br><br>PGS ENTERTAINMENT,<br><br>  Respondent. | Case No.<br><br>**PETITION TO VACATE AND REMAND ARBITRATION AWARD** |

Petitioner Bagdasarian Productions (BP), by and through its attorneys, files this Petition to Vacate the Arbitration Award, and alleges as follows:

## INTRODUCTION

1. In a consolidated pair of arbitrations between BP and its sales agent, PGS Entertainment (PGS), over a contract governing the international distribution of content from the "Alvin and the Chipmunks" entertainment franchise, an arbitrator from the International Center for Dispute Resolution (ICDR) issued a decision that committed four serious errors.

2. After issuing an initial award that found for and against both parties, the arbitrator improperly amended his award in violation of the arbitration rules to increase by an order of magnitude the damages awarded based on a substantive (and highly flawed) reconsideration of evidence; he simply failed to decide one of BP's claims altogether despite being obligated to do so; he did not fix the costs of arbitration; and he awarded (undefined) attorneys' fees against BP based on a claim that BP prevailed on.

3. Each of these errors independently exceeded the arbitrator's authority in a manner so fundamentally flawed that it defeated the parties' expectations in agreeing to arbitration. The Court should therefore vacate and remand the arbitrator's decision under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, which permits a petition to federal court for that purpose.

## THE PARTIES

4. Petitioner BP is a limited liability company formed under the laws of California. BP has three members: Ross Bagdasarian Jr. and Janice Karman, who are both citizens of California, and Karman Ross Productions, Inc., a corporation incorporated in and with its principal place of business in California.

5. Respondent PGS is a French SAS entity incorporated in France with its principal place of business in Paris, France. PGS distributes children's animation programming internationally.

PETITION TO VACATE AND REMAND ARBITRATION AWARD

1

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Petition involves an arbitration award arising out of proceedings conducted in Los Angeles, California, between a U.S. entity and a French entity. The award therefore falls within the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. §§ 201–08. *See* 9 U.S.C. § 202. "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203.

7. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). This is a civil action between a citizen of California and a citizen of France, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in the Central District of California, Western Division, because the parties' arbitration agreement provided that any arbitration occur in Los Angeles County, California, and the New York Convention provides that venue is proper in "the district and division which embraces the place designated in the agreement as the place of arbitration." 9 U.S.C. § 204.

9. Venue is also proper in the Central District of California under the general provisions of the FAA, 9 U.S.C. §§ 1–16, as the arbitrator's "award was made" in Los Angeles, California. 9 U.S.C. § 10(a). The New York Convention incorporates the general provisions of the FAA "to the extent that chapter is not in conflict with the New York Convention." 9 U.S.C. § 208.

10. This Court may properly exercise jurisdiction over PGS because PGS consented to personal jurisdiction in California by agreeing to arbitrate, and in fact arbitrating, in the state.

11. Pursuant to 9 U.S.C. § 12, Petitioner has timely filed this Petition.

2
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# FACTS

## A. The Parties' Underlying Dispute.

12. BP is a family-run business led by Ross Bagdasarian Jr. and his wife Janice Karman. It owns and operates the iconic Alvin and the Chipmunks franchise.

13. BP relies on distributors, sales agents, and other third parties to deliver its content to viewers.

14. In 2012, after having produced three blockbuster motion pictures featuring Alvin and the Chipmunks, BP conceived of and co-produced a new Chipmunks television series entitled *Alvinnn!!! and the Chipmunks* (the Series). The following year, BP and PGS contracted for PGS to serve as BP's international sales agent for the first five seasons of the Series.

15. In 2019, the parties contracted for PGS to sell the Series' forthcoming sixth and seventh seasons (the Agreement), but the COVID-19 pandemic disrupted BP's efforts to develop these new seasons between 2020 and 2022.

16. In response to these challenges, along with significantly-less-than-promised sales, BP informed PGS in April 2021 that it had decided to suspend production of the sixth and seventh seasons, but it ultimately resumed production following the parties' failed attempt at mediation in June 2021.

17. BP provided PGS with a revised delivery schedule in August 2021 and asked PGS to send those dates to broadcasters so that broadcasters were not expecting episodes based on the original schedule. BP was not aware that PGS never communicated those initial changes or a subsequent set of schedule changes to broadcasters.

18. BP suspended production of the Series indefinitely in 2022, after its India-based co-producer and animator, Technicolor Animated Productions (TAP), recommended doing so due to disruptions on its end. BP immediately reached out to PGS and asked to renegotiate the Agreement under Article 1195 of the French Civil Code. PGS never responded.

3
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## B. PGS Initiates Arbitration Proceedings.

19. PGS instead filed a Notice of Arbitration on May 27, 2022 (the First Arbitration).

20. Per the parties' arbitration agreement, the proceedings were conducted by the ICDR in Los Angeles, California under the Independent Film and Television Alliance's (IFTA) international arbitration rules (ICDR-IFTA Rules). The ICDR assigned PGS's arbitration to arbitrator Michael C. Donaldson.

21. PGS alleged that BP breached the Agreement by failing to perform its obligations in good faith. It claimed in relevant part that BP had unreasonably rejected four offers PGS obtained in 2021 for distribution of seasons 6 and 7 in various markets.

22. The arbitrator began 14 days of hearings on September 21, 2022.

23. On November 3, 2022, after 8 days of hearings had been completed, PGS revealed to BP that it had received threats from RTL, a European media conglomerate, related to failures to deliver season 6. Those threats—expressed in RTL's October 14, 2022, letter to PGS, which PGS did not disclose to BP for almost three weeks—stated that RTL had been expecting the initial season 6 episodes on August 1, 2022. That was the *original date in the outdated schedule*, not the revised schedule BP had provided to PGS in August 2021.

24. This correspondence came as a shock to BP. After BP asked why RTL would expect episodes based on the old schedule, PGS waited three weeks to respond, and on November 29, 2022 PGS confirmed that it *never communicated* any of the schedule changes to broadcasters, and indeed *never had any intention* of doing so.

25. Instead of fulfilling its contractual obligations to provide this key information to broadcasters, PGS concealed its inaction from BP. In fact, PGS's correspondence with RTL and another broadcaster, Globo, ultimately revealed that PGS's only communications with broadcasters actually impaired BP's relationship

4
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

with those broadcasters: PGS disclosed to those broadcasters confidential information about the arbitral proceedings and disparaged BP.

## C. BP Initiates Arbitration Proceedings In Response To The Newly Discovered Information.

26. Based on the discovery of this new information, and consistent with ICDR-IFTA Rules, BP promptly filed its own Notice of Arbitration just a few weeks later, on December 16, 2022 (the Second Arbitration).

27. BP asserted two claims against PGS for breach of the Agreement. The claims were based on (1) PGS's failure to provide the revised delivery schedule to broadcasters and its concealment of this failure from BP; and (2) PGS wrongfully disclosing confidential information to broadcasters.

28. The ICDR consolidated BP and PGS's arbitrations and instructed arbitrator Donaldson to hear them together.

29. During discovery, BP learned that PGS had also violated the Agreement by improperly concealing millions of dollars in proposed deals for the Series, despite PGS's obligation to promptly present all potential deals to BP. The value of the concealed deals was more than $7 million.

30. BP then filed an amended Notice of Arbitration on February 2, 2024, adding a third claim of bad faith for failing to disclose these potential deals.

31. PGS asserted its own counterclaim, alleging that BP had disclosed PGS's confidential information to business partners and direct competitors.

## D. The Arbitrator's Decision.

32. The arbitrator issued his Final Award (the Initial Award) on November 21, 2024. The Initial Award addressed claims from both the First and Second Arbitrations.

33. On the First Arbitration, the arbitrator sided with PGS on two of the claims and with BP on the other. In relevant part, he found that BP had rejected three contracts—with Disney, Discovery, and Tele-Quebec—in bad faith during 2021. He

5
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

also held that BP unreasonably rebuffed Nickelodeon's 2021 expression of interest in the Series by declining to make certain creative changes to the Series at Nickelodeon's request.

34. The arbitrator awarded damages to PGS based on BP's rejection of the three contracts and the one potential deal, Nickelodeon's inchoate expression of interest.

35. For the three complete offers, he awarded PGS the amount it would have received under the Agreement, which came to $123,750 for the Disney deal, $196,625 for the Discovery deal, and $95,766.45 for Tele-Quebec.

36. His calculation of damages arising from the potential Nickelodeon deal was different. Given his finding that Nickelodeon's 2021 proposal was never formalized, there was no contract on which to base damages on. The arbitrator instead averaged the proposed license fees of the three offers from Disney, Discovery, and Tele-Quebec, and awarded PGS $138,713.81 for the Nickelodeon offer.

37. The total damages from these potential deals came to $554,855.26.

38. On BP's claims and PGS's counterclaim in the Second Arbitration, the arbitrator ruled that PGS had acted in bad faith by failing to provide the revised schedule to broadcasters, but awarded BP no damages. He rejected BP's claim based on PGS's disclosure of the arbitral proceedings to broadcasters, and he found that PGS was not entitled to recover any damages for its counterclaim.

39. The arbitrator failed to resolve PGS's liability for concealing a number of high-value deals, despite announcing express factual findings that PGS concealed at least twelve deals.

40. Finally, the arbitrator concluded that PGS was not entitled to recover attorneys' fees and costs for the claims it brought in the First Arbitration.

41. He nonetheless awarded PGS fees and costs beginning from the start of the Second Arbitration, despite finding in BP's favor on the Second Arbitration that

6
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

PGS had acted in bad faith, and despite finding facts showing that PGS had violated the Agreement by concealing deals from BP.

42. His award did not specify the amount of fees awarded.

**E. The Arbitrator's "Clarification" Of His Award.**

43. BP and PGS each filed requests for clarification of the award under ICDR-IFTA Article 37.1, which provides that parties may "request the arbitrator to interpret the award or correct any clerical, typographical, or computational errors" in an arbitral award.

44. Despite the narrow scope of clarification permissible under Article 37, PGS requested that the arbitrator consider additional evidence and reverse his substantive finding that there was no proposed contract for the potential Nickelodeon deal in 2021 on which to base damages calculations.

45. PGS claimed this was a request to correct a computational error, but offered to withdraw the request if the arbitrator believed it exceeded Article 37's narrow scope (as it clearly did).

46. Both parties also sought clarification under Article 37 of the indefinite award of fees and costs.

47. BP also sought clarification of the arbitrator's fee award because it purported to award fees to PGS for the Second Arbitration despite finding that PGS had acted in bad faith by failing to disclose the revised delivery schedule to broadcasters.

48. The arbitrator issued an amended decision (the Amended Award) on January 24, 2025.

49. In the Amended Award, the arbitrator claimed to have overlooked a 2020 offer from Nickelodeon that both parties had rejected, and decided to use this separate, distinct offer as the basis for damages.

7
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

50. However, the arbitrator *had* expressly addressed that earlier offer in the Initial Award. But he nonetheless asserted that his initial decision not to use it to calculate damages could be viewed as a computational error.

51. This change increased the damages awarded for rejection of the 2021 Nickelodeon proposal from $138,713.81 to $1,716,000.

52. In addressing the request for clarification of his decision regarding attorneys' fees, the arbitrator declined to specify an amount, and instead ordered the parties to meet and confer to determine the award amount. He acknowledged that this decision likely meant the parties would resort to mediation or litigation to resolve the award.

53. The arbitrator also rejected BP's request for correction or clarification of the award of attorneys' fees to PGS as outside Article 37's scope.

## VACATUR UNDER THE FEDERAL ARBITRATION ACT

54. The Court should vacate the arbitrator's award under 9 U.S.C. § 10(a)(4) because the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

## COUNT ONE (VACATUR OF ARBITRATION AWARD)

55. BP incorporates the allegations of paragraphs 1 through 54 by reference, as if fully set forth within.

56. 9 U.S.C. § 10(a)(4) authorizes this Court to vacate an arbitration award "where the arbitrators exceeded their powers." Here, the arbitrator exceeded his powers by reconsidering the factual findings underpinning his damages award, altering the substance of the award by inflating the damages from BP's rejection of the potential Nickelodeon interest from $138,713.81 to $1,716,000.

57. Those actions were prohibited by the common law doctrine of *functus officio* and exceeded the permissible scope of a correction under IFTA Article 37.1. The increased award did not fall within any of the exceptions to the *functus officio* doctrine, nor did it correct a computational error within the meaning of Article 37.1.

8
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

58. By reason of the foregoing, the Court should issue an order vacating the amended award.

### COUNT TWO (VACATUR OF ARBITRATION AWARD)

59. BP incorporates the allegations of paragraphs 1 through 54 by reference, as if fully set forth within.

60. 9 U.S.C. § 10(a)(4) authorizes this Court to vacate an arbitration award when arbitrators have "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." Here, the arbitrator acknowledged, but never decided, BP's claim that PGS had breached the Agreement and acted in bad faith by concealing third-party broadcast offers.

61. The arbitrator's failure to resolve this issue prevented the award from being final.

62. By reason of the foregoing, the Court should issue an order vacating the arbitration award. In the alternative, BP requests remand to the arbitrator with instructions to award BP damages for the proposed deals the arbitrator found PGS had concealed.

### COUNT THREE (VACATUR OF ARBITRATION AWARD)

63. BP incorporates the allegations of paragraphs 1 through 54 by reference, as if fully set forth within.

64. 9 U.S.C. § 10(a)(4) authorizes this Court to vacate an arbitration award when arbitrators have "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." Here, the arbitrator failed to fix the amount of attorneys' fees and costs it awarded to PGS.

65. The arbitrator's failure to resolve this issue—despite the parties' explicit requests for him to do so—prevent the award from being final under Article 38 of the ICDR-IFTA Rules.

66. By reason of the foregoing, the Court should issue an order vacating the arbitration award.

9
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## COUNT FOUR (VACATUR OF ARBITRATION AWARD)

67. BP incorporates the allegations of paragraphs 1 through 54 by reference, as if fully set forth within.

68. 9 U.S.C. § 10(a)(4) authorizes this Court to vacate an arbitration award "where the arbitrators exceeded their powers" by expressing a manifest disregard for the law. Here, the arbitrator manifestly disregarded the law by awarding attorneys' fees to PGS for the Second Arbitration when PGS was not the prevailing party in that arbitration.

69. By reason of the foregoing, the Court should issue an order vacating the improper fee award.

**WHEREFORE**, BP respectfully requests that this Court:

1. Issue an order pursuant to 9 U.S.C. § 10 vacating the arbitration award.

2. In the alternative, remand to the arbitrator pursuant to 9 U.S.C. § 10 for further proceedings consistent with the Court's opinion.

3. Award BP such other and further relief as this Court deems proper.

DATED: April 11, 2025

DAVIS WRIGHT TREMAINE LLP
DAVID GOSSETT
MARYANN ALMEIDA
HALEY ZOFFER

By: */s/ Haley B. Zoffer*
       Haley B. Zoffer
    Attorneys for Petitioner
    Bagdasarian Productions

10
PETITION TO VACATE AND REMAND ARBITRATION AWARD

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899